# Application of 18 U.S.C. § 208 to Service by Executive Branch Employees on Boards of Standard-Setting Organizations

Under 18 U S.C. § 208, a federal employee may serve as a member of the board of a private voluntary standards organization to the extent necessary to permit participation in his or her official capacity in the organization's standard-setting activities.

August 24, 1998

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF GOVERNMENT ETHICS

This responds to your request of August 10, 1998 for our opinion whether, absent a waiver, 18 U.S.C. § 208 (1994) would forbid employees of the executive branch from serving, in their official capacities, as members of the boards of private voluntary standards organizations. We believe that, to the extent necessary to permit the federal employees to take part in the standard-setting activities, § 208 does not bar such service.

Section 208 prohibits an officer or employee from taking part as a government official in any "particular matter" in which he or she has a financial interest. The statute imputes to the employee the financial interests of certain other persons and entities, including an "organization in which he is serving as officer, director, trustee, general partner or employee." 18 U.S.C. § 208(a). In an earlier opinion, we observed that when an employee is acting in his or her official capacity as a director or officer of an outside entity, the work for that entity necessarily entails official action affecting the entity's financial interests. We therefore concluded that, under 18 U.S.C. § 208, the "broad prohibition against conflicts of interest within the federal government would prevent a government employee from serving on the board of directors of an outside organization in his or her official capacity, in the absence of: (1) statutory authority or a release of fiduciary obligations by the organization that might eliminate the conflict of interest, or (2) a waiver of the requirements of § 208(a), pursuant to 18 U.S.C. § 208(b)." *Service on the Board of Directors of Non-Federal Entities by Federal Bureau of Investigation Personnel in Their Official Capacities*, 20 Op. O.L.C. 379, 379 (1996) ("FBI Opinion"). In particular, if "Congress has authorized the service by statute, the official 'serves . . . in an ex officio rather than personal capacity,' owes a duty only to the United States, and does not violate section 208." *Service by Federal Officials on the Board of Directors of the Bank for International Settlements*, 21 Op. O.L.C. 87 (1997) (citation omitted) ("FRB Opinion").

Since the FBI Opinion, we have had a number of occasions to consider whether particular statutes confer authority for service on outside boards. We have found such authority in a range of circumstances. Sometimes the statutes expressly contemplated official service on an outside board. *See* Memorandum for Files, from

210

Daniel Koffsky, Special Counsel, Office of Legal Counsel, *Re: Foundations and Commissions Under Fulbright Program* (Oct. 24, 1997); Memorandum for Files, from Daniel Koffsky, Special Counsel, Office of Legal Counsel, *Re: Service on Outside Board* (Feb. 27, 1998) (United States-India Fund for Cultural, Educational, and Scientific Cooperation). In another instance, the statute was less explicit, but we found the authority because service on the outside entity was a means by which the United States negotiated with foreign governments and "the breadth of the President's power [in that area] counsels a broad reading of congressional *authorization* for particular means by which the power may be exercised." FRB Opinion, 21 Op. O.L.C. at 89 (citation omitted). In one other instance, where the agency largely conducts its operations in secret and had to create the outside entity to preserve the secrecy of its work, we concluded that the outside organization was, for relevant purposes, a part of the federal government, and thus no conflict existed.

As this experience in applying the principles of the FBI Opinion has made clear, Congress has enacted a variety of arrangements contemplating, directly or indirectly, that federal employees will participate in outside organizations, including by serving on their boards, and it would frustrate these arrangements if such service were considered a disqualifying "director[ship]" under 18 U.S.C. § 208. *See Applicability of 18 U.S.C. § 208 to Proposed Appointment of Government Official to the Board of Connie Lee*, 18 Op. O.L.C. 136, 138 (1994) (categories of service considered outside statute). We believe that there are circumstances in which statutory authority for service on an outside board can be found even though Congress has not expressly addressed that service. When Congress has specifically provided for participation in outside organizations and such participation, to carry out the statutory purposes, entails service on a board, statutory authorization may be inferred.

Here, Congress has provided that, in general, federal agencies and departments "shall use technical standards that are developed or adopted by voluntary consensus standards bodies" and, in carrying out this requirement, "shall consult with voluntary, private sector, consensus standards bodies and shall, when such participation is in the public interest and is compatible with agency and departmental missions, authorities, priorities, and budget resources, *participate with such bodies in the development of technical standards.*" National Technology Transfer and Advancement Act of 1995, Pub. L. No. 104–113, § 12(d)(1) & (2), 110 Stat. 775, 783 (1996), 15 U.S.C. § 272 note (1994) (emphasis added). As the legislative history explains, Congress desired and anticipated that federal agencies would "work closely" with voluntary standard-setting organizations, that these organizations would "include active government participation," and that agencies would "work with these voluntary consensus standards bodies, whenever and wherever appropriate." H.R. Rep. No. 104–390, at 15, 25 (1995). When the board of an outside organization plays an integral role in the process of setting standards, it

would therefore frustrate the statute to forbid federal employees from being on the board. They could not then take the "active" role that Congress mandated. To carry out the statute, therefore, employees may serve on these outside boards without running afoul of 18 U.S.C. § 208, if the boards are engaged in the standard-setting activities in which Congress directed federal agencies to participate.

To be sure, § 208 allows for waivers when the employee's "interest is not so substantial as to be deemed likely to affect the integrity of the services which the Government may expect," 18 U.S.C. § 208(b)(1), and thus a conclusion that § 208 generally would bar employees from serving on standard-setting bodies in their official capacities would not necessarily have prevented the service in every instance. Nevertheless, reliance on the waiver procedure would not be consonant with the statutory scheme here. Congress itself has resolved the possible conflict between duties to the organization and duties to the United States, at least to the extent that the criminal prohibition may be at issue.

We would not reach the same conclusion, however, if the board of an organization had only administrative responsibilities and was not directly involved in standard-setting. In that event, the congressional direction to "participate . . . in the development of technical standards" would not apply. Consequently, in accordance with the FBI Opinion, § 208 would bar the service on the board, absent a waiver or an effective release from fiduciary duty.

Finally, you also ask us to confirm your view that an employee's service in an official capacity as the chair of a working committee or subcommittee of a standard-setting organization, to the extent the position imposes no fiduciary duty and creates no employer-employee relationship, would not implicate 18 U.S.C. § 208. We agree that service in such a position would not itself trigger the statute. Indeed, we are far from certain that a position other than one specified in § 208— "officer, director, trustee, general partner or employee"—could be the basis for imputing an organization's financial interest to the employee, even if that other position created a fiduciary duty to the organization. In any event, the positions you describe would not give rise to an imputed disqualification.

BETH NOLAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*